**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ALABAMA**
**NORTHWESTERN DIVISION**

FILED

01 JUL 12 AM 8:20

U.S. DISTRICT COURT
N.D. OF ALABAMA

TONYA SUZANNE GRAHAM,                    )
                                         )
          Plaintiff,                     )
                                         )
vs.                                      )   Civil Action No. CV-00-S-1206-NW
                                         )
FLORENCE COMPREHENSIVE CARE              )
CENTER, INC., BEVERLY                    )
ENTERPRISES, INC., and                   )
BEVERLY ENTERPRISES, INC.                )
ASSOCIATE GROUP HEALTH PLAN,             )
                                         )
          Defendants.                    )

ENTERED

JUL 12 2001

## MEMORANDUM OPINION

Plaintiff alleges that she was wrongfully denied benefits
under an employee health benefit plan in violation of the Employee
Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001
*et seq.*   In addition, plaintiff contends that the denial of
benefits amounts to a breach of contract and fraud under Alabama
law.   The action originally was filed in the Circuit Court of
Lauderdale County, Alabama, but removed to this court.   *See* 28
U.S.C. § 1331.   The action presently is before the court on a
motion for summary judgment filed by defendant Florence
Comprehensive Care Center, Inc.

## I. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) provides, in part, that
summary judgment not only is proper, but "shall be rendered



forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corporation v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986).

The moving party bears the initial burden of showing the court, by reference to materials on file, that no genuine issues of material fact exist to be decided at trial. *See generally id.* at 323, 106 S.Ct. at 2553; *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). The movant discharges this burden by "showing" or "pointing out" to the court that there is an absence of evidence to support the non-movant's case. *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir. 1995) (*per curiam*). Rule 56 permits the movant to discharge this burden with or without supporting affidavits. *See Celotex Corporation*, 477 U.S. at 324,

2

106 S.Ct. at 2553.

When the moving party has discharged its burden, the non-movant must go beyond the pleadings and designate specific facts showing there is a genuine issue for trial. *See Jeffery,* 64 F.3d at 593. The nonmoving party must put forth more than a "mere 'scintilla'" of evidence; instead, "there must be enough of a showing that the jury could reasonably find for that party." *Walker v. Darby,* 911 F.2d 1573, 1577 (11th Cir. 1990).

In deciding whether the movant has met its burden, the court is obligated to draw all inferences from the evidence presented in the light most favorable to the non-movant and, also, to resolve all reasonable doubts in that party's favor. *See generally Spence v. Zimmerman,* 873 F.2d 256 (11th Cir. 1989). Inferences in favor of the non-movant are not unqualified, however. "Mere general allegations which do not reveal detailed and precise facts will not prevent the award of summary judgment." *Resolution Trust Corporation v. Dunmar Corporation,* 43 F.3d 587, 592 (11th Cir. 1995) (citation omitted). Moreover, evidence that is merely colorable, *see Brown v. City of Clewiston,* 848 F.2d 1534, 1537 (11th Cir. 1988), conclusory, *see Peppers v. Coates,* 887 F.2d 1493, 1498 (11th Cir. 1989), or conjectural, does not create a genuine

3

issue of material fact.

Thus, if a reasonable fact finder evaluating the evidence could draw more than one inference from the facts, and if that inference introduces a genuine issue of material fact, then the court should not grant summary judgment. *See Augusta Iron & Steel Works v. Employers Insurance of Wausau*, 835 F.2d 855, 856 (11th Cir. 1988). A "genuine" dispute about a material fact exists if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Jeffery*, 64 F.3d at 594 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)).

> The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case. The relevant rules of substantive law dictate the materiality of a disputed fact. A genuine issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving party for a reasonable jury to return a verdict in its favor.

*Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000) (*en banc*) (quoting *Haves v. City of Miami*, 52 F.3d 918, 921 (11th Cir. 1995) (internal marks and citations omitted)); *see also United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir. 1991) (*en banc*). The bottom line is "whether the evidence presents a sufficient disagreement to require submission to a jury

4

or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52, 106 S.Ct. at 2512.

## II. BACKGROUND

Plaintiff, Tonya Suzanne Graham, was hired as a nurse by defendant Florence Comprehensive Care Center, Inc. ("Florence") on March 7, 1996.[1] Florence is owned and operated by defendant Beverly Enterprises, Inc. ("Beverly").[2] Beverly maintains the Beverly Enterprises Incorporated Associate Group Health Plan ("the Plan").[3] According to Raymond Minkle, Beverly's Vice President of Benefits Administration, the Plan is a self-funded welfare benefit plan, which provides health coverage to employees of Beverly who are both eligible to participate in the plan, and who are properly enrolled as provided in the Plan.[4]

According to the terms of the Plan, newly hired employees are first eligible to become active participants in the Plan by

---

[1] Defendant's evidentiary submission (doc. no. 19), Exhibit 3 (Rollins affidavit), ¶ 4.

[2] *Id.*, Exhibit 1 (Minkle affidavit), ¶ 3.

[3] *Id.*, ¶ 4.

[4] *Id.* In her brief in opposition to defendant's motion for summary judgment (doc. no. 22), plaintiff cites Minkles' affidavit for the proposition that "[t]he plan or insurance coverage is financed either wholly or partially by insurance premiums...." *Id.* at 2. Minkle's affidavit, however, says nothing of the kind. Instead, Minkle plainly testified that "[t]he Plan is a self-funded employee welfare benefit plan." Defendant's evidentiary submission (doc. no. 19), Exhibit 1 (Minkle affidavit), ¶ 4.

5

enrolling at any time prior to their "coverage effective date."[5]
The "coverage effective date" for such employees is the first day
of the month on or following completion of three continuous months
of full-time employment.[6]   Accordingly, plaintiff could have
enrolled in the Plan as a "new hire" any time prior to July 1,
1996.  She neglected to do so.

When a newly hired employee fails to enroll during the initial
eligibility period, as did the plaintiff in this case, he or she
may apply for enrollment "during the annual enrollment period in
the last quarter of each calender year"; in that event, however,
the employee must provide satisfactory evidence of insurability.[7]
Enrollment during the annual enrollment period is effective "on the
first day of the month following approval of the evidence furnished
for each prospective enrollee of such person's satisfactory health
status...."[8]

Plaintiff applied for coverage under the Plan on November 24,

---

[5] *Id.*, Exhibit 1 (Minkle affidavit), attachment B (Summary plan
description), at 4. *See also id.*, attachment A (Health Plan), at 7-8.

[6] *Id.*, Exhibit 1 (Minkle affidavit), attachment B (Summary plan
description), at 4.

[7] *Id.*, attachment A (Health Plan), at 9-10. The summary plan description
states that, "satisfactory evidence of insurability is the completion of a health
questionnaire for each applicant. If further information regarding insurability
is needed, you and your dependents may be required to submit to a physical
examination performed by a qualified physician at your expense." *Id.*, Exhibit
1 (Minkle affidavit), attachment B (Summary plan description), at 7.

[8] *Id.*, Exhibit 1 (Minkle affidavit), attachment A (Health Plan), at 10.

6

1996, a date which falls within the last quarter of 1996. At the time she applied for coverage, however, plaintiff was pregnant. The Plan provides that "an associate ... who is pregnant at the time of the annual enrollment period is not eligible to apply for coverage and must wait to apply during the next annual enrollment period."[9] Accordingly, plaintiff was not eligible on the date of her application, and was required by the terms of the Plan to wait until the next annual enrollment period, the last quarter of 1997, to reapply.

Nevertheless, plaintiff argues that an administrator at Florence, a "Mr. Ayers,"[10] orally informed her that if she applied for health insurance coverage during November of 1996, her coverage would begin the following month.[11] Plaintiff states that she has never received a copy of the policy, or any summary of the Plan, but was repeatedly told by Mr. Ayers that she was entitled to coverage.[12]

Plaintiff gave birth to a child near the end of May of 1997, and thereafter submitted claims to the Plan for reimbursement of

---

[9] *Id.*, attachment B (Summary plan description), at 7.

[10] The full name of this individual or the precise position he held at Florence is not established by the parties' evidentiary submissions.

[11] Plaintiff's evidentiary submission (doc. no. 21), (Plaintiff's affidavit).

[12] *Id.*

7

the medical expenses related to her pregnancy.[13]  Plaintiff's claims were denied by the Plan's claim administrator.

The Plan provides administrative remedies to claimants. Plaintiff had 60 days following notice of the decision denying her claims to file a written appeal with the Beverly Enterprises Benefits Administration Department's Medical Appeals Coordinator.[14] Plaintiff did not pursue her administrative appeal.  Instead, she filed the instant action on April 3, 2000, alleging breach of the insurance contract (Count I), wrongful refusal to pay insurance benefits in violation of ERISA (Count II), and fraud (Count III).[15]

Florence has argued that denial of plaintiff's claims was proper for two reasons.  First, plaintiff's pregnancy precluded her from applying for coverage under the Plan until the last quarter of 1997.  Second, even if plaintiff were deemed properly enrolled in the Plan, Florence argues that she still would have been denied coverage because her pregnancy constituted a pre-existing condition.  The Plan expressly excludes pre-existing conditions from coverage unless certain conditions, which are not applicable

---

[13] Defendant's evidentiary submission (doc. no. 19), Exhibit 2 (Deane affidavit), attachment A (Claims report).  The evidentiary submissions do not state the exact date on which plaintiff gave birth.

[14] Id., Exhibit 1 (Minkle affidavit), attachment A (Health Plan) at 20.

[15] Id., Exhibit 4 (Complaint).  Plaintiff later amended her complaint to allege violation of ERISA's disclosure and reporting requirements. See Amendment to Count II of Plaintiff's Complaint (doc. no. 11).

8

here, are met.[16]  The Plan states that

>   [a] pre-existing condition is a condition (including
> pregnancy, disability, injury, or illness) or any related
> condition:

>>   for which diagnosis (even if an incorrect
>>   diagnosis), advice, and/or treatment was
>>   received, or;

>>   for which supplies, including drugs or
>>   medications, were received, prescribed, used,
>>   or purchased

>   during the three months prior to a participant's
> effective date of coverage.[17]

Plaintiff has asserted that she was enrolled in the Plan in May of

1997.[18]  Even assuming plaintiff was enrolled in the Plan at that

time, Florence contends plaintiff's pregnancy constituted a pre-

_____

[16] Id., Exhibit 1 (Minkle affidavit), attachment A (Health Plan), at 24.
These conditions provide that if an associate or dependent has a pre-existing
condition, charges will not be paid until:

1)   the insured has "gone three consecutive months from the
     effective date of coverage without supplies (including drugs,
     medicine, prescriptions, or refills, whether or not actually
     taken or purchased), treatment, diagnosis, or advice for that
     condition (whether or not charges are incurred); or

2)   the employee has "been actively at work and covered under the
     plan for six consecutive months, regardless of expenses
     incurred, drugs used, or treatments received during that
     time"; or

3)   if a dependent has "been covered for the plan for 12
     consecutive months, regardless of expenses incurred, drugs
     used, or treatments received during that time."

Id.

[17] Id.

[18] Id., Exhibit 4 (Complaint), ¶ 2.

9

existing condition which would also justify denial of her claims.

Florence submits that

> Plaintiff was aware of her pregnancy at least as early as
> November 1996. ... The absence report contained in
> Plaintiff's personnel file at Florence establishes that
> Plaintiff missed work on April 4, 1997, and on this day
> received medical advice regarding her pregnancy. *See*
> Exhibits B and C to the Rollins Aff. Plaintiff's
> pregnancy therefore falls squarely within the definition
> of a pre-existing condition under the Plan.[19]

## III. DISCUSSION

### A. Counts I & III: Preemption of Plaintiff's State Law Claims

ERISA's preemption clause provides that the Act "supersede[s]

any and all State laws insofar as they now or hereafter relate to

any employee benefit plan...." 29 U.S.C. § 1144(a).[20] The Supreme

Court has observed that ERISA's preemption clause "is conspicuous

for its breadth," *FMC Corp. v. Holliday*, 498 U.S. 52, 58, 111 S.Ct.

403, 407, 112 L.Ed.2d 356 (1990), and instructed district courts

that it should be "expansively applied." *Ingersoll-Rand Company v.*

*McClendon*, 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474

---

[19] Defendant's brief in support of motion for summary judgment (doc. no.20), at 13.

[20] In full text, 29 U.S.C. § 1144(a) provides:

> Except as provided in subsection (b) of this section, the
> provisions of this subchapter and subchapter III of this chapter
> shall supersede any and all State laws insofar as they may now or
> hereafter relate to any employee benefit plan described in section
> 1003(a) of this title and not exempt under section 1003(b) of this
> title. This section shall take effect on January 1, 1975.

10

(1990). Even so, certain state laws "may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n.21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490 (1983). "[H]owever, state laws found to be beyond the scope of § 1144 are few." *Jackson v. Martin Marietta Corp.*, 805 F.2d 1498, 1499 (11th Cir. 1986).

Whenever the issue of ERISA preemption arises, the initial question to be addressed is whether a "plan" exists under the Act. ERISA defines an "employee welfare benefit plan" as:

> any plan, fund or program which ... is ... established or maintained by an ... employer ... for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment....

29 U.S.C. § 1002(1). When determining whether a plan exists under ERISA, this court must (1) ascertain whether the benefits offered by the plan at issue are those covered by the statute, and (2) confirm that there are "some sort of procedures" which implement the plan. *Thomas v. Burlington Industries, Inc.*, 763 F. Supp. 1570, 1573 (S.D. Fla. 1991). Here, the health insurance benefits offered by the Plan are those kind of benefits expressly referred

11

to in ERISA. *See* 29 U.S.C. § 1002(1). Further, a review of the policy and the summary plan description reveals the specific procedures used to implement the Plan. Accordingly, the court concludes that the plan at issue is an employee benefit plan under 29 U.S.C. § 1144(a).

Next, the court must determine whether plaintiff's state law claims of breach of contract and fraud "relate to" the Plan. The Eleventh Circuit has explained that "Congress used the words 'relates to' in their broad sense and did not mean to preempt only state laws specifically designed to affect employee benefit plans. ... A state law relates to an employee benefit plan if it has a connection to or reference to such a plan." *First National Life Insurance Company v. Sunshine-Jr. Food Stores, Inc.*, 960 F.2d 1546, 1550 (11th Cir. 1992), *cert. denied*, 506 U.S. 1079, 113 S.Ct. 1045, 122 L.Ed.2d 354 (1993).

The court finds that plaintiff's state law breach of contract and fraud claims "relate to" the employee benefit plan. Both claims are made in reference to the Plan, and the breach of contract claim would require the court to examine the Plan in order to address that cause of action. *See Garren v. John Hancock Mutual Life Insurance Co.*, 114 F.3d 186, 187 (11th Cir. 1997) (holding

12

that a state claim relates to an ERISA plan for purposes of preemption "whenever the alleged conduct at issue is intertwined with the refusal to pay benefits"). Accordingly, these claims (Counts I and III) are preempted by ERISA, and are due to be dismissed. *See Swehun v. Guardian Life Insurance, Co.*, 979 F.2d 195, 198 (11th Cir. 1992) (finding that breach of contract claims are preempted by ERISA); *Amos v. Blue Cross-Blue Shield of Alabama*, 868 F.2d 430, 431 (11th Cir. 1989) (holding that plaintiff's breach of contract and fraud claims are preempted by ERISA); *Phillips v. Amoco Oil Co.*, 799 F.2d 1464, 1469 (11th Cir. 1986) (holding that Alabama fraud claim was preempted by ERISA); *Tucker v. Employers Life Insurance Co.*, 689 F. Supp. 1073, 1076 (N.D. Ala. 1988) (holding that state law claims for breach of contract and fraud are preempted by ERISA).

## B.   Count II: Plaintiff's Wrongful Denial of Benefits Claim

In Count II of her complaint, plaintiff alleges that defendants violated ERISA when they "wrongfully denied" and "refused to pay" her insurance claims.[21]   Florence asserts that it is entitled to summary judgment on this count because plaintiff failed to exhaust her administrative remedies prior to filing this

---

[21] Notice of Removal (doc. no. 1), attachment (Complaint), Count II, ¶ 4.

13

action.

The Eleventh Circuit has held "that plaintiffs in ERISA cases must normally exhaust available administrative remedies under their ERISA-governed plans before they may bring suit in federal court." *Springer v. Wal-Mart Associates' Group Health Plan*, 908 F.2d 897, 899 (11th Cir. 1990); *see also Mason v. Continental Group, Inc.*, 763 F.2d 1219, 1224-27, (11th Cir. 1985), *cert. denied*, 474 U.S. 1087, 106 S.Ct. 863, 88 L.Ed.2d 902 (1986). There are many policy considerations which support the exhaustion requirement. For example, exhaustion of administrative remedies: (1) reduces the number of frivolous suits filed under ERISA; (2) prevents premature judicial intervention; and (3) reduces the costs of dispute resolution. *Mason*, 763 F.2d at 1227.

There are, nevertheless, a limited number of exceptions to the exhaustion requirement. For example, exhaustion is not required if the plaintiff establishes that it would be futile or if the remedy would be inadequate. *Springer*, 908 F.2d at 899. Here, plaintiff has made no such showing.

The Plan provides detailed information on how a claimant is to file claims, how claims are processed, and how a claimant can

appeal a claim that has been denied.[22]  Plaintiff has failed to plead facts or present evidence showing that she invoked the appeals process and exhausted the administrative remedies under the Plan.   Accordingly, plaintiff's claim of wrongful denial of benefits under ERISA is due to be dismissed.

## C.  Plaintiff's Amendment to Count II: Defendants' Alleged Violation of ERISA's Reporting and Disclosure Provisions

Plaintiff amended Count II of her complaint on July 24, 2000, alleging that defendants[23] also violated their "duty of disclosure and reporting as required by 29 U.S.C. § 1021 and § 1024(1)(B), in that no Plan Summary was delivered to the Plaintiff and the Plaintiff was never informed as to the exact provisions or requirements of the Plan."[24]  In response, Florence asserts that it is not subject to liability for violation of these sections because plaintiff failed to make an effective request for information.

The general duty to disclose under ERISA is found in 29 U.S.C.

---

[22] Defendant's evidentiary submission (doc. no. 19), Exhibit 1 (Minkle affidavit), attachment A (Health Plan), at 20-21.

[23] While the amendment to Count II specified only Florence as a violator of ERISA's disclosure requirements, plaintiff amended her entire complaint on September 15, 2000, adding Beverly Enterprises, Inc. and Beverly Enterprises Inc. Associate Group Health Plan as parties defendant. *See* amended complaint (doc. no. 13).

[24] Amendment to Count II of complaint (doc. no. 11).  Plaintiff alleges violation of "§ 1024(1)(B)."  There is no such provision.  The court assumes that plaintiff was actually referring to § 1024(b)(1), the ERISA provision which governs disclosure of summary plan descriptions to participants and beneficiaries.

§ 1021, which provides:

> (a) The administrator of each employee benefit plan shall cause to be furnished in accordance with section 1024(b) of this title to each participant [25] covered under the plan and to each beneficiary who is receiving benefits under the plan —
>
> > (1) a summary plan description described in section 1022(a)(1) of this title; and
> >
> > (2) the information described in sections 1024(b)(3) and 1025(a) and (c) of this title.

29 U.S.C. § 1021(a)(1-2). In turn, 29 U.S.C. § 1024(b) provides:

> (1) The administrator shall furnish to each participant, and each beneficiary receiving benefits under the plan, a copy of the summary plan description, and all modifications and changes referred to in section 1022(a)(1) of this title —
>
> > (A) within 90 days after he becomes a participant, or (in the case of a beneficiary) within 90 days after he first receives benefits, or
> >
> > (B) if later, within 120 days after the plan becomes subject to this part.

29 U.S.C. § 1024(b)(1)(A-B). If a plan administrator fails to comply with ERISA's reporting requirements, a plan participant may

---

[25] ERISA defines a "participant" as follows:

> The term "participant" means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers employees of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit.

29 U.S.C. § 1002(7).

16

seek injunctive and monetary relief under ERISA's civil enforcement provisions, 29 U.S.C. §§ 1132(a)(1) and 1132(c)(1). *See Welsh v. GTE Service Corp.*, 866 F. Supp. 1420, 1425 (N.D. Ga. 1994) (explaining that in cases alleging reporting and disclosure violations, a plaintiff must sue under § 1132(a)(1)(A) for the relief provided in § 1132(c)). Section 1132(a)(1)(A) allows participants and beneficiaries to sue "for relief provided for in subsection (c) of this section...." Subsection (c), in turn, states:

(1) Any administrator (A) who fails to meet the requirements of paragraph (1) or (4) of section 1166[26] of this title or section 1021(e)(1)[27] of this title with respect to a participant or beneficiary, or (B) who fails or refuses to comply with a request for any information which such administrator is required by this subchapter to furnish to a participant or beneficiary (unless such failure or refusal results from matters reasonably beyond the control of the administrator) by mailing the material requested to the last known address of the requesting participant or beneficiary within 30 days after such request may in the court's discretion be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such failure or refusal, and the court may in its discretion order such other relief as it deems proper. ...

29 U.S.C. § 1132(c)(1) (emphasis supplied).

---

[26] COBRA notification requirements.

[27] Notification requirements when transferring excess pension assets to a health benefits account.

17

The statute makes clear that liability under § 1132(c) cannot be imposed for a violation of the reporting requirements found in 29 U.S.C. §§ 1021 and 1024, unless and until a participant or beneficiary first requests from the administrator the information to which she is entitled, and the administrator fails to comply with this request within 30 days. *See Crotty v. Cook*, 121 F.3d 541, 547 (9th Cir. 1997) (holding that in an action asserting violations of § 1024(b)(1), a plaintiff must first request the sought-after information); *Kleinhaus v. Lisle Savings Profit Sharing Plan*, 810 F.2d 618, 622 (7th Cir. 1987) (holding that recovery in an action alleging violation of ERISA's reporting and disclosure requirements is limited to those cases where the participant has in fact affirmatively requested the information); *Mohalley v. Kendall Health Care Products Company, Inc.*, 903 F. Supp. 1530, 1536 (M.D. Ga. 1995) (holding that administrator violated disclosure requirements of § 1024(b)(1) where it failed to provide such information after participant had expressly requested it).

Even assuming *arguendo* that plaintiff was properly enrolled in the Plan and an active participant under it, she has neither pled facts nor submitted any evidence indicating that she affirmatively

18

requested a plan summary or any other information from defendants

regarding the Plan. Accordingly, plaintiff's claim pertaining to

the defendants' alleged failure to disclose information under 29

U.S.C. §§ 1021 and 1024 is due to dismissed.

## C.   Violation of Alabama's Policy Delivery Statute

In plaintiff's brief in opposition to defendant's motion for

summary judgment, she cites (for the first time during these

proceedings) Alabama Code § 27-14-19.   This section, which is

located in the title that constitutes the Alabama Insurance Code,

provides that "every policy shall be mailed or delivered to the

insured or to the person entitled thereto within a reasonable

period of time after its issuance, except where a condition

required by the insurer has not been met by the insured." *Alabama

Code* § 27-14-19(a) (1975) (1998 Replace. Vol.).[28]   Plaintiff

contends that, because defendants failed to comply with this

provision, they are "estopped from asserting the policy's

conditions of or exclusions from coverage."[29]   Plaintiff further

_____

[28] In full, the section provides:

   Subject to the insurer's requirements as to payment of
premium, every policy shall be mailed or delivered to the insured or
to the person entitled thereto within a reasonable period of time
after its issuance, except where a condition required by the insurer
has not been met by the insured.

Ala.Code § 27-14-19(a) (1975) (1998 Replace. Vol.).

[29] Plaintiff's brief in opposition to defendant's motion for summary

19

argues that Alabama Code § 27-14-19(a) regulates insurance and is not preempted by ERISA, and summarily concludes that "[n]one of the Defendant's arguments for summary judgment apply in view of the fact that there is no ERISA preemption...."[30]

Defendant Florence has moved to strike plaintiff's brief because the arguments contained therein are based upon Alabama Code § 27-14-19(a), "a purported cause of action that Plaintiff has failed to plead."[31]  Rule 12(f) of the Federal Rules of Civil Procedure permits the court, on motion of either party, to strike "from any pleading any insufficient defense or redundant, immaterial, impertinent or scandalous matter." Fed. R. Civ. P. 12(f). Briefs, however, are not pleadings. *See id.* 7(a) (defining pleadings as complaints, answers, and replies to counterclaims). The filing of a motion to strike, therefore, is not a proper way to

judgment (doc. no 22), at 2.   Plaintiff cites *Brown Machine Works & Supply Company, Inc. v. Insurance Company of North America,* 695 So. 2d 51, 61 (Ala. 1995), for this proposition. There, the Alabama Supreme Court stated:

> We hold that § 27-14-19 requires that the insurance policy be "mailed or delivered" to the purchaser of a policy and to the named insured, and that an insurer may be estopped from asserting conditions of, or exclusions from, coverage where such a purchaser or insured is prejudiced by the insurer's failure to comply with the statute.

*Id.*

[30] Plaintiff's brief in opposition to defendant's motion for summary judgment (doc. no 22), at 2.

[31] Motion to strike, or in the alternative, motion for leave to file a reply brief (doc. no. 23), at 1.

challenge the plaintiff's brief. *See Lowery v. Hoffman*, 188 F.R.D. 651, 653 (M.D. Ala. 1999) (holding that a Rule 12(f) motion to strike is not the appropriate manner to challenge a party's memoranda or briefs); *Board of Education v. Admiral Heating & Ventilation, Inc.*, 94 F.R.D. 300, 304 (N.D. Ill. 1982) (holding that memoranda are not pleadings and, thus, a motion to strike was improper). Even so, plaintiff's additional arguments premised upon the violation of Alabama Code § 27-14-19(a) are not persuasive, because that state law provision is clearly preempted by ERISA.

The preemption clause, previously discussed in section III. A of this opinion, is limited by the "saving clause," 29 U.S.C. § 1144(b)(2)(A), which exempts state laws that regulate insurance from ERISA preemption.[32]  The saving clause, in turn, is qualified by the "deemer clause," 29 U.S.C. § 1144(b)(2)(B), which provides that ERISA plans shall not "be deemed to be an insurance company or other insurer, ... or to be engaged in the business of insurance ... for purposes of any law of any State purporting to regulate insurance companies [or] insurance contracts...."[33]  The Supreme

---

[32] The section provides that "nothing in this subchapter shall be construed to exempt or relieve any person from any law of any State which regulates insurance, banking, or securities." 29 U.S.C. § 1144(b)(2)(A).

[33] In full text, the deemer clause provides:

Neither an employee benefit plan described in section 1003(a) of this title, which is not exempt under section 1003(b) of this

21

Court has held:

> We read the deemer clause to exempt self-funded
> ERISA plans from state laws that "regulate insurance"
> within the meaning of the saving clause. By forbidding
> States to deem employee benefit plans "to be an insurance
> company or other insurer ... to be engaged in the
> business of insurance," the deemer clause relieves plans
> from state laws "purporting to regulate insurance." As
> a result, self-funded ERISA plans are exempt from state
> regulation insofar as that regulation "relate[s] to" the
> plans.

*FMC Corp. v. Holliday*, 498 U.S. 52, 61, 111 S.Ct. 403, 409, 112

L.Ed.2d 356 (1990) (emphasis supplied). The *Holliday* Court went on

to state that "[o]ur interpretation of the deemer clause makes clear

that ... if the plan is uninsured [*i.e.* self-funded], the State may

not regulate it." *Id.* at 64, 111 S.Ct. at 411; *see also Mullenix*

*v. Aetna Life and Casualty Insurance Company*, 912 F.2d 1406, 1413

(11th Cir. 1990) (holding that "self-insured ERISA plans are not

subject to state insurance regulation either directly or indirectly,

and state insurance law purporting to apply to such a plan is

preempted").

   Applying the above principles to the instant case, the court

---

title (other than a plan established primarily for the purpose of
providing death benefits), nor any trust established under such a
plan, shall be deemed to be an insurance company or other insurer,
bank, trust company, or investment company or to be engaged in the
business of insurance or banking for purposes of any law of any
State purporting to regulate insurance companies, insurance
contracts, banks, trust companies, or investment companies.

29 U.S.C. § 1144(b)(2)(B).

concludes that Alabama's policy delivery statute is a state law which regulates insurance. This fact would normally lead to the conclusion that it, and plaintiff's estoppel claims which are based upon its alleged violation, are saved from preemption. ERISA's deemer clause, however, alters this conclusion because the plan at issue is self-funded.[34] Accordingly, Alabama's policy delivery statute and plaintiff's estoppel argument premised upon it are preempted.

## IV. CONCLUSION

For the foregoing reasons, this court concludes that defendant's motion for summary judgment is due to be granted with respect to all of plaintiff's claims. An order consistent with this memorandum opinion will be entered contemporaneously herewith.

DONE this the $\underline{11^{th}}$ day of July, 2001.

United States District Judge

---

[34] Raymond Minkle testified that "Beverly Enterprises Inc. maintains the Beverly Enterprises, Inc. Associate Groups Health Plan.... The Plan is a self-funded employee welfare benefit plan." Defendant's evidentiary submission (doc. no. 19), Exhibit 1 (Minkle affidavit), ¶ 4.

23